## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

LINDA K. BAKER,         )
                               )
                Plaintiff,   )
                               )
v.                             )     Case No. CIV-08-1071-HE
                               )
MICHAEL J. ASTRUE,     )
COMMISSIONER OF THE SOCIAL   )
SECURITY ADMINISTRATION,   )
                               )
                Defendant.  )

## REPORT AND RECOMMENDATION

Plaintiff, Ms. Linda K. Baker, seeks judicial review of a denial of disability insurance benefits (DIB) and supplemental security income benefits (SSI) by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be reversed and remanded for further proceedings consistent with this Report and Recommendation.

## I.    Procedural Background

Ms. Baker filed her applications for DIB and SSI on February 8, 2005, alleging an inability to work since January 1, 2004. Ms. Baker's applications were denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record [Doc. #11] (AR) at 13-22. The Appeals Council denied Ms. Baker's request for review. AR 5-8. This appeal followed.

## II.   **The ALJ's Decision**

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520; 416.920.  She first determined that Ms. Baker had not engaged in substantial gainful activity at any time relevant to her decision.  AR 18.  At step two, the ALJ determined that Ms. Baker has one severe impairment, a "back condition."  AR 18.  At step three, the ALJ found that Ms. Baker's impairment does not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 18.  The ALJ next considered Ms. Baker's residual functional capacity (RFC).  She determined that Ms. Baker has the RFC to perform sedentary work, "compromised by the ability to climb, balance, kneel, stoop, crawl, and crouch only occasionally and the need to sit and stand in the work area while performing job tasks on an as needed basis."  AR 19.  At step four, the ALJ concluded that Ms. Baker can perform past relevant work including office manager, secretary, sales clerk, and receptionist. AR 22.

## III.   **Standard of Review**

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Doyal v. Barnhart*, 331 F.3d 758,  760 (10th Cir. 2003) (quotation omitted).   A  decision  is  not  based  on  substantial  evidence  if  it  is

overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, but the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Hackett*, 395 F.3d at 1172 (quotations and citations omitted).

**IV.**    **Issues Raised on Appeal**

Ms. Baker asserts two propositions of error: (1) that the ALJ erred in weighing the opinion of her treating physician, and (2) that the ALJ erred in failing to fully develop the record.

**V.**    **Analysis**

**A.**    **The ALJ's Analysis of the Opinion of the Treating Physician**

Ms. Baker's medical records reflect that she has been seeing her treating physician, Dr. Charles W. Dickerson, since 2001. Dr. Dickerson has treated Ms. Baker for both her chronic low back pain, which the ALJ found to be severe, and her depression, with associated panic and insomnia, which the ALJ found was not severe.

On February 15, 2005, Dr. Dickerson opined that Ms. Baker is "a candidate for long-term disability" because of her age and the "severity of her noncurative problems." Dr. Dickerson based his opinion on X-rays taken on March 7, 2001, which indicated that Ms. Baker was suffering from severe degenerative disc disease and spondylosis. AR 165.

3

On January 4, 2007, Dr. Dickerson completed a Physical Residual Functional Capacity Questionnaire.  Dr. Dickerson's diagnosis included L4-5 spinal canal stenosis, lumbar degenerative disc disease, L4-5 spondylolisthesis, and bilateral radiculopathy characterized by moderate to severe chronic low back and leg pain.  He stated that Ms. Baker cannot sit or stand longer than 30 minutes without reclining to relieve the pain and that she also suffers from depression.  Dr. Dickerson stated that Ms. Baker's pain is constantly of such severity as to interfere with her attention and concentration, resulting in her inability to tolerate even low stress jobs.  According to Dr. Dickerson, Ms. Baker can sit, stand and walk fewer than two hours in an eight-hour working day and would need an unscheduled break every thirty minutes so that she could rest for sixty minutes.  Other restrictions include never twisting, stooping, crouching, climbing ladders or climbing stairs.  Finally, Dr. Dickerson stated that Ms. Baker would likely be absent from work more than four days per month because of her impairments.  AR 223-226.

Dr. Dickerson's physical RFC is supported not only by his clinical observations during the many years he has been treating Ms. Baker, but also by the objective X-ray studies referenced above and the results of an MRI.  The report of the MRI dated February 2, 2006, documents partial to complete disc desiccation from L2-3 through L5-S1 with anterior spondylolisthesis at L4 relative to L5.  An annular bulge between discs at L3-4 has caused mild spinal canal stenosis, a narrowing of the spinal canal.  Multiple problems at L4-5 have resulted in moderate spinal canal stenosis and moderate bilateral foraminal stenosis which is a narrowing of the openings in the spine through which the nerves pass.  The problems at

L4-5 include an annular bulge combined with significant bilateral facet hypertrophy, an overgrowth of bone in the facet joints; a thickening of the ligamentum flavum, the ligament that connects the laminae of the vertebrae; and the spondylolisthesis described above. A protrusion or bulge at L5-S1 with a right foraminal component causes mild spinal canal stenosis and mild right foraminal stenosis at this level as well. AR 219.

The administrative record also includes a report summarizing finding made by Dr. Jennifer Holmes after she examined Ms. Baker on May 27, 2005, at the request of the State of Oklahoma Disability Determination Division. Dr. Holmes' diagnosis included chronic hip pain, depression, and hypothyroidism. Additionally, Dr. Holmes opined that some of Ms. Baker's pain is attributable to trochanteric bursitis. AR 130-132. Dr. Holmes made the following observations:

> Pt ambulates with a safe, stable gait at an appropriate speed without the use of any assistive devices. Pt is wearing tennis shoes. She is able to take these on and off without any apparent difficulty. She is able to descend onto the exam table without assistance. She is able to tandem walk without difficulty.

AR 132. Dr. Holmes concluded that Ms. Baker has normal range of motion in all joints. AR 133.

The administrative record also includes progress notes from Dr. Thomas J. Eiser. The report of an examination conducted on February 1, 2006, indicates that Ms. Baker was experiencing tenderness in her lower lumbar area with slightly limited range of motion in all directions. X-ray studies showed significant narrowing of disc space at L5-S1 with osteophytic spurring. AR 222. On February 15, 2006, Dr. Eiser noted persistent tenderness

and limitation of motion of the dorsal lumbar spine.  He recommended lumbar epidural injections.  AR 221.

A medical opinion from a  treating source, such as Dr. Dickerson's opinion in this case, is generally entitled to more weight than the opinion of a non-treating source.  *See* 20 C.F.R. §§ 404.1527(d)(2).  "Medical opinions" are defined as:

> statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.

20 C.F.R. §§ 404.1527(a); 416.927(a).

Using a sequential analysis to evaluate the opinions of treating sources, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  If an opinion fails to satisfy either of these conditions, the ALJ must then determine what weight, if any, should be given to the opinion by considering (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or

contradict the opinion.  *Id.* at 1301.  The ALJ must set forth specific legitimate reasons for completely rejecting an opinion of a treating source.  *Id.*

In this case, the ALJ accurately summarized Dr. Dickerson's RFC, but she apparently rejected all of his findings:

> The undersigned finds that these global restrictions on work activity of all exertional levels are grossly inconsistent with the mildly positive findings made upon physical examination and laboratory testing.  In this case, the claimant's physician was acting as an advocate for disability when positing such undocumented and unsubstantiated limitations on functioning.

AR 21.  In determining that Dr. Dickerson's opinion was not entitled to any weight, the ALJ failed to discuss any of the factors listed in *Watkins*.  She also failed to specify which "mildly positive findings" undermine Dr. Dickerson's opinion.  The ALJ apparently ignored the objective findings from the MRI results as she did not explain why the results were inconsistent with, rather than supportive of, Dr. Dickerson's opinion.  Because the ALJ neither properly analyzed the opinion of Ms. Baker's treating physician nor supported her findings with substantial evidence from the record as a whole, it is recommended that this case be remanded for further consideration of Dr. Dickerson's medical opinion.

**B.    The ALJ's Duty to Develop the Record**

Ms. Baker also contends that the ALJ failed to properly develop the record regarding her depression.  Ms. Baker states that the discrepancy between the opinion of her treating physician and the State Agency doctor regarding the severity of her depression called for the ALJ either to recontact Dr. Dickerson, Ms. Baker's  treating physician, for further

information or to order a consultative examination regarding her depression and overall mental condition.

Because a social security disability hearing is nonadversarial, the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Department of Health & Human Services*, 13 F.3d 359, 360-61 (10th Cir. 1993). "It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits[.]" *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (internal citation omitted). If the medical evidence in the record is inconclusive, "a consultative examination is often required for proper resolution of a disability claim." *Hawkins v. Chater*, 113 F.3d 1162, 1166 (10th Cir. 1997). *See also* 20 C.F.R. 404.1512(f) ("If the information we need is not readily available from the records of your medical treatment source, or we are unable to seek clarification from your medical source, we will ask you to attend one or more consultative examinations at our expense."); 20 C.F.R. § 416.912(f ) (same).

Medical records included in the administrative record reflect that Dr. Dickerson has prescribed medication to treat Ms. Baker's depression, anxiety and insomnia for several years. *See* AR 161-193. Nevertheless, the ALJ determined that Ms. Baker's mental impairments are not severe. The ALJ cited the lack of evaluation or counseling from a mental health professional, AR 18, as well as the findings of the non-examining State agency doctors, AR 21, to support her determination that Ms. Baker's alleged mental impairments are not severe. In determining that Ms. Baker's mental impairments are not severe, the ALJ

relied heavily on the first factor – that Ms. Baker has never been evaluated or counseled by a mental health professional. In reaching this conclusion, however, the ALJ did not consider whether Ms. Baker's failure to seek evaluation or counseling from a mental health professional might be attributable to the fact that Ms. Baker has neither medical insurance nor a steady source of income. *See* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *7 ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide."). On remand, the Commissioner should consider all relevant factors in determining whether to re-contact Dr. Dickerson, order a consultative mental examination, or both.

## RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this Report and Recommendation.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objections must be filed with the Clerk of the District Court by June   22nd  , 2009. *See* LCvR72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## **STATUS OF REFERRAL**

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this __2nd__ day of June, 2009.

VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE